**DEREK SMITH LAW GROUP, PLLC**
CATHERINE W. LOWRY, ESQUIRE
Attorney ID No. 316291
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0832
catherine@dereksmithlaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEPHEN MCCOY SR.; STEPHEN MCCOY JR.; EUGENE SCRUGGS; JACQUES JOHNSON; JOSEPH MCCOY; KENDALL COLSTON; LEBARRON COOPER; MARTIN FREMPONG; MICHAEL BROWN; MICHAEL CAMPBELL; AND KEVIN KELLY, <br><br> Plaintiffs, <br><br> v. <br><br> PEPPER ENVIRONMENTAL SERVICES INC.; WALT AMBRUSTER; AND STEVEN PEPPER, <br><br> Defendants. | Civil Action No. <br><br> **PLAINTIFFS DEMAND A TRIAL BY JURY** |

## <u>COMPLAINT</u>

Plaintiffs, Stephen McCoy Sr., Stephen McCoy Jr., Eugene Scruggs, Jacques Johnson, Joseph McCoy, Kendall Colston, Lebarron Cooper, Martin Frempong, Michael Brown, Michael Campbell, and Kevin Kelly, by and through their attorneys, Derek Smith Law Group, PLLC, by way of this Complaint, state:

## PARTIES

1. Plaintiff Stephn McCoy Sr. (hereinafter referred to as "Plaintiff McCoy Sr.") is an individual resident of Bucks County within the Eastern District of Pennsylvania.

2. Plaintiff Stephen McCoy Jr. (hereinafter referred to as "Plaintiff McCoy Jr.") is an individual resident of Philadelphia County within the Eastern District of Pennsylvania.

3. Plaintiff Eugene Scruggs (hereinafter referred to as "Plaintiff Scruggs") is an individual resident of Philadelphia County within the Eastern District of Pennsylvania.

4. Plaintiff Jacques Johnson (hereinafter referred to as "Plaintiff Johnson") is an individual resident of Philadelphia County within the Eastern District of Pennsylvania.

5. Plaintiff Joseph McCoy (hereinafter referred to as "Plaintiff J. McCoy") is an individual resident of Bucks County within the Eastern District of Pennsylvania.

6. Plaintiff Kendall Colston (hereinafter referred to as "Plaintiff Colston") is an individual resident of Philadelphia County within the Eastern District of Pennsylvania.

7. Plaintiff Lebarron Cooper (hereinafter referred to as "Plaintiff Cooper") is an individual resident of Camden County in the State of New Jersey.

8. Plaintiff Martin Frempong (hereinafter referred to as "Plaintiff Frempong") is an individual resident of Delaware County within the Eastern District of Pennsylvania.

9. Plaintiff Michael Brown (hereinafter referred to as "Plaintiff Brown") is an individual resident of Philadelphia County within the Eastern District of Pennsylvania.

10. Plaintiff Michael Campbell (hereinafter referred to as "Plaintiff Campbell") is an individual resident of Philadelphia County within the Eastern District of Pennsylvania.

11. Plaintiff Kevin Kelly (hereinafter referred to as "Plaintiff Kelly") is an individual resident of Bucks County within the Eastern District of Pennsylvania.

12. Hereinafter, Plaintiffs McCoy Sr., McCoy Jr., Scruggs, Johnson, J. McCoy, Colston, Cooper, Frempong, Brown, Campbell, and Kelly are collectively referred to as "Plaintiffs."

13. At all times material, Defendant Pepper Environmental Services, Inc. (hereinafter referred to as "Defendant PES") was and still is a domestic for-profit limited liability corporation incorporated in the Commonwealth of Pennsylvania with their headquarters located at 2251 Fraley Street, Philadelphia, PA 19137.

14. At all times material, Defendant Walt Ambruster (hereinafter referred to as "Defendant Ambruster"), identified as white and, upon information and belief, was and still is the Vice President of Defendant PES.

15. At all times material, Defendant Ambruster held supervisory authority over Plaintiffs.

16. At all times material, Defendant Steven Pepper (hereinafter referred to as "Defendant Pepper"), identified as white and, upon information and belief, was and still is the President of Defendant PES.

17. At all times material, Defendant Pepper held supervisory authority over Plaintiffs.

18. At all times material, Defendants were the joint employers of Plaintiffs.


**NATURE OF THE ACTION**

19. Plaintiffs complain pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), 42 U.S.C. §1981 ("§1981"), the Pennsylvania

Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRA"), and the

Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO").

20. Plaintiffs seek damages to redress the injuries they have suffered as a result of being

discriminated against, by Defendants, their employer, due to their race, and as a result of

being retaliated against for their opposition to, and reporting of, Defendants unlawful

behavior.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. Around November 16, 2023, Plaintiffs McCoy Sr., Campbell, Brown, Scruggs, Johnson

and Cooper timely filed a Charge of Discrimination and Retaliation with the U.S. Equal

Employment Opportunity Commission ("EEOC"), the Pennsylvania Human Relations

Commission ("PHRC"), and the Philadelphia Commission on Human Relations

("PCHR") alleging violations of Title VII, §1981, and the PHRA.

22. Around November 20, 2023, Plaintiff Frempong timely filed a Charge of Discrimination

and Retaliation with EEOC, the PHRC, and the PCHR alleging violations of Title VII,

§1981, and the PHRA.

23. Around November 29, 2023, Plaintiff McCoy Jr. timely filed a Charge of Discrimination

and Retaliation with EEOC, the PHRC, and the PCHR alleging violations of Title VII,

§1981, and the PHRA.

24. Around December 7, 2023, Plaintiff J. McCoy timely filed a Charge of Discrimination

and Retaliation with EEOC, the PHRC, and the PCHR alleging violations of Title VII,

§1981, and the PHRA.

25. Around December 11, 2023, Plaintiff Colston timely filed a Charge of Discrimination and Retaliation with EEOC, the PHRC, and the PCHR alleging violations of Title VII, §1981, and the PHRA.

26. Around December 22, 2023, Plaintiff Kelly timely filed a Charge of Discrimination and Retaliation with EEOC, the PHRC, and the PCHR alleging violations of Title VII, §1981, and the PHRA.

27. Around November 13, 2025, the EEOC issued Plaintiffs a "Notice of Right to Sue" letter.

28. This action is being commenced within ninety (90) days of Plaintiffs receiving their "Notice of Right to Sue" letter from the EEOC.

29. Plaintiffs' PHRA claims are ripe because more than one year has elapsed since PHRC assumed jurisdiction over Plaintiffs' Charges of Discrimination.

30. Plaintiffs have complied with all administrative prerequisites to bring this lawsuit.


**JURISDICTION AND VENUE**

31. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions under federal law under Title VII and §1981.

32. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

33. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil

action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

34. Venue is this judicial district is proper pursuant to 28 U.S.C §1391(b) and 42 U.S.C. §2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in Philadelphia, Pennsylvania within the Eastern District of Pennsylvania, and Defendants are subject to personal jurisdiction here.

## MATERIAL FACTS

35. Each of the Plaintiffs began working at Defendant PES in the summer of 2023.

36. Plaintiffs McCoy Jr., J. McCoy, Colston, Kelly, Campbell, Brown, Frempong, Scruggs, Johnson, and Cooper each were hired by Defendant PES as Laborers.

37. Plaintiff McCoy Sr. was hired by Defendant PES as a Labor Foreman.

38. Almost immediately after Plaintiffs were hired by Defendant PES, Defendants began subjecting them to a hostile work environment due to their race.

39. By way of example, and by no means an exhaustive list, segregation was widespread throughout Defendant PES.

40. More specifically, Hispanic individuals that were employed by Defendant PES were segregated and only worked with other Hispanic workers per the direction of Defendants.

41. Caucasian individuals that were employed by Defendant PES were segregated and only worked with other Caucasian workers per the direction of Defendants.

42. African American individuals that were employed by Defendant PES were segregated and only worked with other African American workers per the direction of Defendants.

43. In addition to the segregation that existed at Defendant PES, Plaintiffs were required to do the labor-intensive, foundational, and hazardous work.

44. Defendant PES' Caucasian employees were assigned the lower effort, specialized, and safer work.

45. Upon information and belief, Plaintiffs and Caucasian employees were all equally qualified to perform the lower effort and specialized work.

46. Upon information and belief, the only reason Defendants assigned the lower effort and specialized work to the Caucasian employees was because they were Caucasian and because they wanted to assign the "grunt" work to the Plaintiffs.

47. The work assigned to the Plaintiffs included potential asbestos exposure and other hazardous and/or dangerous work.

48. On at least one occasion, Defendants failed to properly test the area, and Plaintiffs were exposed to asbestos.

49. Upon information and belief, none of Defendant PES' Caucasian employees were ever exposed to asbestos because they were never assigned such labor-intensive and/or foundational work.

50. Additionally, the Plaintiffs were not provided with the proper equipment, including but not limited to respiratory equipment.

51. On at least one occasion, this led to one of the Plaintiffs, Plaintiff Colston, to suffer a large laceration to his finger.

52. Upon information and belief, Defendant PES Caucasian employees were always provided with the appropriate equipment, including but not limited to respiratory equipment.

53. In fact, there were times when the proper equipment wasn't being utilized by other Defendant PES employees, but the Plaintiffs were not provided with the equipment.

54. Upon information and belief, this was because Defendants desired to subject the Plaintiff to "slave" like labor.

55. Defendants would also attempt to force Plaintiffs to return from their lunch breaks early, limit their bathroom breaks, and prohibit them from retrieving cold water to drink during their shifts.

56. Upon information and belief, Defendants did not similarly attempt to control the actions of Defendant PES' Caucaisan employees.

57. Moreover, Plaintiff McCoy Sr. would often times have to track down Defendants to retrieve the Plaintiffs' paychecks.

58. Upon information and belief, Defendants did so in order to make it more difficult for Plaintiffs to receive their pay and in an effort to delay Plaintiffs' receiving their pay.

59. Upon information and belief, Defendant PES Caucasian employees' checks were hand delivered by Defendants.

60. Furthermore, Defendant Ambruster and Defendant Pepper contributed to the hostile work environment by making derogatory comments regarding African American individuals.

61. By way of example, and by no means an exhaustive list, on one occasion Defendant Pepper asked Plaintiff McCoy Sr. "where did you get this old guy," referring to Plaintiff Campbell.

62. Defendant Pepper went on to remark, "if this was back in the days of slavery you would have cost me money because I'd have to kill my own property."

63. Plaintiff McCoy Sr. responded by telling Defendant Pepper that his comment was out of line or word to that effect.

64. By way of further example, Defendant Ambruster often referred to the Plaintiffs as "you black guys," or "you guys," rarely if ever using their first or last names or speaking to them as individuals.

65. In fact, on numerous occasions Plaintiffs heard Defendant Ambruster refer to them as **Niggers** under his breath when he was walking away.

66. Defendant Ambruster made also comments such as "I like Hispanics because they know their place. **Blacks are too uppity. You all don't know your place**."

67. By way of further example, Defendant Ambruster also made comments such as, "I will fire your **black ass** and I'll make sure you don't ever work anywhere again," and "don't forget I sign your checks."

68. By way of further example, Plaintiffs heard Defendant Ambruster tell African American employees of Defendant PES "get the fuck out of the way," and "you are worthless."

69. Plaintiffs did not observe Defendant Ambruster make similar comments to Defendant PES' non-African American employees.

70. By way of further example, on one occasion, after Plaintiff McCoy Sr. told Defendant Ambruster his tone and demeanor were inappropriate, Defendant Ambruster replied, "you don't like my attitude? I can call you anything I want, nigger, black bastard, jig."

71. Defendant Ambruster's comments occurred on an almost daily, if not daily, basis and were observed by Defendant Pepper.

72. Additionally, Defendants were generally demeaning, degrading, and hostile towards Plaintiffs in their tone and mannerisms.

73. These racially discriminatory and derogatory comments and conduct of Defendants caused Plaintiffs to feel extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

74. Plaintiff McCoy Sr. expressed his discomfort to Defendant Ambruster, and informed Defendant Ambruster that his comments about Plaintiffs was discriminatory.

75. Plaintiff McCoy Sr. further informed Defendant Ambruster that he would resign if Defendants continued to discriminate against and degrade Defendant PES' African American employees.

76. Defendant Ambruster responded by stating, "**I'll make sure your black ass won't work anywhere in this city again.**"

77. On or around August 18, 2023, Defendant Pepper contacted Plaintiff McCoy Sr. via telephone.

78. Plaintiff McCoy Sr. missed the initial phone call, but called Defendant Pepper back.

79. After speaking with Plaintiff McCoy Sr., Defendant Pepper put Defendant Ambruster on the phone.

80. Defendant Ambruster stated to Plaintiff McCoy Sr., "you and everyone that is with you is fired. **All you black guys can go home**. I am done with you."

81. Defendant Ambruster further informed Plaintiff McCoy Sr. that all of the African American employees of Defendant PES (i.e., the Plaintiffs) were terminated and told Plaintiff McCoy Sr. to make them aware.

82. Thereafter, Defendant Ambruster approached Plaintiff McCoy Sr. and the other Plaintiffs in person.

83. Each of the Plaintiffs expressed their concerns regarding their termination to Defendant Ambruster.

84. During the interaction, Plaintiff Scruggs and Plaintiff Johnson heard Defendant Ambruster mumble "**Nigger**" in response to something Plaintiff McCoy Sr. said.

85. Defendant Armbruster, in response, stated to the Plaintiffs, "if **you all** knew how to act and knew your place you could stay here. But you don't know your place."

86. Each of the Plaintiffs' employment with Defendant PES was terminated on August 18, 2023.

87. As a result of Defendants' actions, Plaintiffs felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

88. As a result of the acts and conduct complained of herein, Plaintiffs have suffered and will suffer the loss of income, bonuses, benefits and other compensation which such employment entails, and Plaintiffs also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs have further experienced severe emotional and physical distress.

89. As a result of Defendants' conduct, the Plaintiffs were caused to sustain serious and permanent personal injuries.

90. Plaintiffs further claim aggravation, activation and/or exacerbation of any preexisting condition.

91. Plaintiffs claim that Defendants unlawfully retaliated against and terminated them due to their opposition to the unlawful conduct of Defendants.

92. The above are just some of the discrimination and retaliation to which Defendants subjected Plaintiffs.

93. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

94. Plaintiffs claim alternatively that Plaintiffs were Independent Contractors, and Plaintiffs make all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiffs claim that Defendants owed and breached its duty to Plaintiffs to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

95. Plaintiffs claims a continuous practice of discrimination and retaliation and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**DISCRIMINATION**
**UNDER TITLE VII**
**(by Plaintiffs against Defendant PES only)**

96. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

97. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

98. Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

99. Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

100.    Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiffs with respect to their compensation, terms, conditions, training and privileges of employment because of their race.

101.    Defendants subjected Plaintiffs to adverse tangible employment actions—defined as significant changes in employment status, discipline, suspension and termination, and/or causing changes in significant changes in employment benefits.

102.    Plaintiffs' protected characteristics (race) played a determinative factor in the Defendants' decisions.

103.    Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiffs are pretextual and can readily be disbelieved.

104.    Alternatively, Plaintiffs' race played a motivating part in the Defendants' decisions even if other factors may also have motivated their actions against Plaintiffs.

105.    Defendants acted with the intent to discriminate.

106.    Defendants acted upon a continuing course of conduct.

107.    As a result of the Defendants' violations of Title VII, Plaintiffs have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

## COUNT II
## HOSTILE WORK ENVIRONMENT
## UNDER TITLE VII
### (by Plaintiffs against Defendant PES only)

108.     Plaintiffs repeat and reallege each and every allegation made in the above

paragraphs of this complaint.

109.     Title VII also prohibits hostile work environment harassment, defined as

unwanted comments or conduct regarding the Plaintiffs' protected characteristics that

have the purpose or effect of unreasonably interfering with the terms and conditions of

the Plaintiffs' employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

110.     An employer is strictly liable for supervisor harassment that "culminates in a

tangible employment action, such as discharge, demotion, or undesirable reassignment."

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

111.     Respondeat superior liability for the acts of non-supervisory employees exists

where "the defendant knew or should have known of the harassment and failed to take

prompt remedial action." Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir.

1990).

112.     Employer liability for co-worker harassment also exists where "the employer

failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper

Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

113.     The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

114.     Here, Defendants' conduct occurred because of Plaintiffs' legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

115.     The discriminatory conduct directly referred to Plaintiffs' race.

116.     Plaintiffs' supervisors had the authority to control Plaintiffs' work environment, and they abused that authority to create a hostile work environment.

117.     Derogatory and racist conduct and comments filled the environment of Plaintiffs' work area.

118.     Defendants knew that the derogatory and racist conduct and comments filled Plaintiffs' work environment.

119.     The derogatory and racist conduct and comments occurred on an almost if not daily basis.

120.     The derogatory and racist comments and conduct caused Plaintiffs to sustain severe emotional distress.

121.     Plaintiffs subjectively regarded the derogatory and racists comments and conduct as unwelcome, unwanted and she objectively opposed the conduct.

122.     The conduct was both severe and pervasive.

123.     The conduct was emotionally damaging and humiliating.

124.     The conduct unreasonably interfered with Plaintiffs' work performance.

125.    The conduct was so extreme that it resulted in material changes to the terms and

conditions of Plaintiffs' employment.

126.    The Defendants provided a futile avenue for complaint.

127.    The Defendants retaliated against Plaintiffs for their complaints.

128.    The Defendants acted upon a continuing course of conduct.

129.    As a result of the Defendants' violations of Title VII, Plaintiffs have suffered

damages including but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.


**COUNT III**
**RETALIATION**
**UNDER TITLE VII**
**(by Plaintiffs against Defendant PES only)**

130.    Plaintiffs repeat and reallege each and every allegation made in the above

paragraphs of this complaint.

131.    Title VII protects employees from retaliation for attempting to exercise their

rights under the Act:

42 U.S.C. § 2000e-3. Other unlawful employment practices

(a) Discrimination for making charges, testifying, assisting, or participating
in enforcement proceedings. It shall be an unlawful employment practice for
an employer to discriminate against any of his employees . . . because [she]
has opposed any practice made an unlawful employment practice by this
subchapter, or because [she] has made a charge, testified, assisted, or
participated in any manner in an investigation, proceeding, or hearing under
this subchapter.

132.      The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68
(2006) held that a cause of action for retaliation under Title VII lies whenever the
employer responds to protected activity in such a way that "might have dissuaded a
reasonable worker from making or supporting a charge of discrimination."

133.      Informal complaints and protests can constitute protected activity under the
"opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d
331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal
protests of discriminatory employment practices, including making complaints to
management.")

134.      Title VII's anti-retaliation provision also protects employees who speak out about
discrimination by answering questions during an employer's internal investigation.
<u>Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee</u>, 555 U.S.
271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by
responding to someone else's question just as surely as by provoking the discussion, and
nothing in the statute requires a freakish rule protecting an employee who reports
discrimination on his own initiative but not one who reports the same discrimination in
the same words when her boss asks a question.").

135.      Retaliation need not be job-related to be actionable under Title VII—an employer
can effectively retaliate against an employee by taking actions not directly related to her
employment or by causing her harm outside the workplace. <u>White</u>, 548 U.S. at 61-62
(rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an
adverse employment action in order to recover for retaliation).

136.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995); see also Moore, 461 F.3d at 341 (finding that a transfer of a police officer from a district could constitute actionable retaliation because it "is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

137.    An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

138.    Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

139.    Here, the Defendants discriminated against Plaintiffs because of their protected activity under Title VII.

140.    Plaintiffs acted under a reasonable, good faith belief that their, or someone else's, right to be free from discrimination on the basis of race was violated.

141.    Plaintiffs were subjected to materially adverse actions at the time or after the protected conduct took place.

142.    There was a causal connection between the Defendants' materially adverse actions and Plaintiffs' protected activity.

143.    The Defendants actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

144.    The Defendants acted upon a continuing course of conduct.

145.    Plaintiffs will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the Defendants' actions taken against them, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiffs after Defendants became aware of their protected activity.

146.    As a result of the Defendants' violations of Title VII, Plaintiffs have suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**DISCRIMINATION**
**UNDER § 1981**
**(by Plaintiffs against all named Defendants)**

147.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

148.    Section 1981 prohibits race discrimination in the making and enforcing of

contracts. 42 U.S.C. §1981.

149.    42 U.S.C. §1981 states in relevant part as follows:

a    "Statement of equal rights All persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts,

to sue, be parties, give evidence, and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens,

and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions

of every kind, and to no other."

b    "Make and enforce contracts" includes the "making, performance, modification,

and termination of contracts, and the enjoyment of all benefits, privileges, terms, and

conditions of the contractual relationship."

150.    The Third Circuit has stated that "a wide panoply of adverse employment actions

may be the basis of employment discrimination suits under Title VII claims

interchangeably with respect to adverse employment actions." See, e.g., Barnes v.

Nationwide Mut. Ins. Co., 598 Fed. Appx. 86, 90 (3d Cir, 2015); Storey v. Burns Int'l

Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (a Title VII case); Thompson v. City of

Waco 764 F.3d 500, 503 (5th Cir. 2014) (a Section 1981 case).

151.    Under Section 1981 both employers and individual employees can be liable for

discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir.

2001) ("Although claims against individual supervisors are not permitted under Title VII,

this court has found individual liability under § 1981 when [the defendants] intentionally

cause an infringement of rights protected by Section 1981, regardless of whether the

[employer] may also be held liable.") <u>Al-Khazraji v. Saint Francis College</u>, 784 F.2d 505, 518 (3d Cir. 1986 ("employees of a corporation may become personably liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable.")

152.    Defendants violated Section 1981 by intentionally discriminating against Plaintiffs in a serious tangible way with respect to their compensation, terms, conditions, and/or privileges of employment.

153.    Plaintiffs' race was a determinative or motivating factor in Defendants' employment actions.

154.    Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

155.    Plaintiffs' race played a motivating part in the Defendants' decisions even if other factors may have also motivated Defendants' actions against Plaintiffs.

156.    Defendants acted with the intent to discriminate.

157.    Defendants acted upon a continuing course of conduct.

158.    Defendants acted with malice or reckless indifference to Plaintiffs' federally protected rights and as a result there should be an award of punitive damages against Defendants.

159.    As a result of Defendants' violations of Section 1981, Plaintiffs have suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT V
## HOSTILE WORK ENVIRONMENT
## UNDER § SECTION 1981
### (by Plaintiffs against all named Defendants)

160.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

161.     The standards for a hostile work environment claim are identical under Title VII and Section 1981. See, e.g., Verdin v. Weeks Marine Inc., 124 Fed. Appx. 92, 95 (3d Cir. 2005) ("Regarding [plaintiff's hostile work environment claim, the same standard used under Title VII applies under Section 1981."); Ocasio v. Leigh Valley Family Health Center, 92 Fed. Appx 876, 879-80 (3d Cir. 2004)("As amended by the 1991 Civil Rights Act, § 1981 now encompasses hostile work environment claims, and we apply the same standards as in a similar Title VII claim.")

162.     While the standards of liability are identical under Title VII and Section 1981, there is a major difference in the coverage of the two provisions: under Title VII, only employers can be liable for discrimination in employment, but under Section 1981, individuals, including other employees, can be liable for racial discrimination against an employee. See Cardenas, 269 F.3d at 268; Al-Khazarji, F.2d at 518.

163.     Defendants subjected Plaintiffs to harassment motivated by Plaintiffs' race.

164.     Defendants' conduct was not welcomed by Plaintiffs.

165.     Defendants' conduct was so severe and/or pervasive that a reasonable person in Plaintiffs' position would find the work environment to be hostile or abusive.

166.      Plaintiffs believed their work environments were hostile and abusive as a result of Defendants' conduct.

167.      As a result of the hostile work environment, Plaintiffs suffered a "tangible employment action" defined as a significant change in employment status.

168.      Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiffs to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiffs.

169.      Defendants acted upon a continuing course of conduct.

170.      As a result of Defendants' violations of Section 1981, Plaintiffs have suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VI**
**RETALIATION**
**UNDER § 1981**
**(by Plaintiffs against all named Defendants)**

171.      Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

172.    The Supreme Court has held that retaliation claims are cognizable under Section 1981 despite the absence of specific statutory language. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

173.    The Third Circuit has indicated that the legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim. See Cardenas, 269 F.3d at 263 ("[T]o establish a prima facie retaliation claim under Title VII [or] § 1981 … , [a plaintiff] must show: (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action"); Khair v. Campbell Soup Co., 893 F. Supp. 316, 335-36 (D.N.J. 1995)(noting that with respect to retaliation claims, "The Civil Rights Act of 1991 extended § 1981 to the reaches of Title VII").

174.    The most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3) testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section 1981. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1299 (3d Cir. 1997) (filing discrimination complaint constitutes protected activity), overruled on other grounds by Burlington N. & S.F. Ry. Co. v. White, 126 S. Ct. 2405 (2006); Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997) (advocating equal treatment was protected activity); Aman v. Cort Furniture, 85 F.3d 1074, 1085 (3d Cir. 1989) (under Title VII's anti-retaliation provisions "a Plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed;"); Griffiths v.

CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United Stated Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Milner v. CIGNA Corp., 47 F,3e 58 (3d Cir. 1995).

175.    Here, Defendants retaliated against Plaintiffs because of their protected activity under Section 1981.

176.    Plaintiffs were acting under a reasonable, good faith belief that their, or someone else's, right to be free from discrimination on the basis of race was violated.

177.    Plaintiffs were subjected to a materially adverse action at the time, or after the protected conduct took place.

178.    There was a causal connection between Defendants' materially adverse actions and Plaintiffs' protected activity.

179.    Defendants acted upon a continuing course of conduct.

180.    Plaintiffs will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against them, such as the usually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiffs after Defendants became aware of their protected activity.

181.    As a result of Defendants' violations of Section 1981, Plaintiffs has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT VII**
**DISCRIMINATION**
**PHRA § 955**
**(by Plaintiffs against Defendant PES only)**

182.    Plaintiffs repeat and reallege each and every allegation made in the above
paragraphs of this complaint.

183.    The PHRA § 955 provides that it shall be an unlawful discriminatory practice:
"(a) For any employer because of the race, color, religious creed, ancestry, age, sex,
national origin or non-job related handicap or disability or the use of a guide or support
animal because of the blindness, deafness or physical handicap of any individual or
independent contractor, to refuse to hire or employ or contract with, or to bar or to
discharge from employment such individual or independent contractor, or to otherwise
discriminate against such individual or independent contractor with respect to
compensation, hire, tenure, terms, conditions or privileges of employment or contract, if
the individual or independent contractor is the best able and most competent to perform
the services required."

184.    Defendants engaged in an unlawful discriminatory practice by discriminating
against Plaintiffs because of their race.

185.    As a result of the Defendants' violations of the PHRA, Plaintiffs have suffered
damages including but not limited to: past and future lost wages, pain and suffering,
inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,
reputational harm, diminishment of career opportunities, and other harm, both tangible
and intangible.

26

**COUNT VIII**
**RETALIATION**
**PHRA § 955(d)**
**(by Plaintiffs against all named Defendants)**

186.    Plaintiffs repeat and reallege each and every allegation made in the above
paragraphs of this complaint.

187.    PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For
any person, employer, employment agency or labor organization to discriminate in any
manner against any individual because such individual has opposed any practice
forbidden by this act, or because such individual has made a charge, testified or assisted,
in any manner, in any investigation, proceeding or hearing under this act."

188.    Defendants engaged in an unlawful discriminatory practice by discharging,
retaliating, and otherwise discriminating against Plaintiffs because of Plaintiffs'
opposition to the unlawful and discriminatory employment practices of Defendants.

189.    As a result of the Defendants' violations of the PHRA, Plaintiffs have suffered
damages including but not limited to: past and future lost wages, pain and suffering,
inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,
reputational harm, diminishment of career opportunities, and other harm, both tangible
and intangible.

**COUNT IX**
**AIDING AND ABETTING**
**PHRA § 955€**
**(by Plaintiffs against all Individually Named Defendants)**

190.    Plaintiffs repeats and realleges each and every allegation made in the above
paragraphs of this complaint.

191.     PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For

any person, employer, employment agency, labor organization or employee, to aid, abet,

incite, compel or coerce the doing of any act declared by this section to be an unlawful

discriminatory practice, or to obstruct or prevent any person from complying with the

provisions of this act or any order issued thereunder, or to attempt, directly or indirectly,

to commit any act declared by this section to be an unlawful discriminatory practice."

192.     Defendants engaged in an unlawful discriminatory practice in violation of PHRA §

955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

193.     As a result of the Defendants' violations of the PHRA, Plaintiffs have suffered

damages including but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

### COUNT X
### DISCRIMINATION UNDER
### PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (by Plaintiffs against all named Defendants)

157.     Plaintiffs repeat and reallege each and every allegation made in the above

paragraphs of this complaint.

158.     The PFPO § 9-1103(1) provides that "It shall be an unlawful discriminatory

practice:  "to deny or interfere with the employment opportunities of an individual based

upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related

medical condition), sexual orientation, gender identity, religion, national origin, ancestry,

age, disability, marital status, familial status, genetic information, or domestic or sexual

violence victim status, including, but not limited to, the following: (a) For any employer

to refuse to hire, discharge, or otherwise discriminate against any individual, with respect

to tenure, promotions, terms, conditions or privileges of employment or with respect to

any matter directly or indirectly related to employment."

159.    Defendants engaged in an unlawful discriminatory practice in violation of PFPO §

9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise

discriminating against Plaintiffs because of Plaintiffs race.

160.    Plaintiffs hereby make a claim against Defendants under all the applicable

paragraphs of PFPO Chapter 9-1100.


## COUNT XI
## RETALIATION
## PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE
### (by Plaintiffs against all named Defendants)

161.    Plaintiffs repeat and reallege each and every allegation made in the above

paragraphs of this complaint.

162.    The PFPO § 9-1103(1)(g) provides that it shall be unlawful discriminatory

practice: "For any person to harass, threaten, harm, damage, or otherwise penalize,

retaliate or discriminate in any manner against any person because he, she or it has

complied with the provisions of this Chapter, exercised his, her or its rights under this

Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in

any manner in any investigation, proceeding or hearing hereunder."

163.    Defendants engaged in an unlawful discriminatory practice in violation of PFPO §

9-1103(1)(g) by discriminating against Plaintiffs because of Plaintiffs' opposition to the

unlawful employment practices of Defendants.

164.     Defendants discriminated against Plaintiffs because Plaintiffs asserted their rights to a discrimination-free workplace under the PFPO.

165.     Plaintiffs were acting under a reasonable, good faith belief that their right to be free from discrimination on the basis of race was violated.

166.     Because Plaintiffs asserted their rights under the PFPO, Defendants retaliated against them by terminating them.

167.     Plaintiffs will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendants' actions taken against them, such as the unusually suggestive proximity in time between events.

168.     As a result, Plaintiffs have suffered damages.

**COUNT XII**
**AIDING AND ABETTING UNDER**
**PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE**
**(by Plaintiffs against all Individually Named Defendants)**

169.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint.

170.     The PFPO § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

171.    Defendants engaged in an unlawful discriminatory practice in violation of the

PFPO § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above

discriminatory, unlawful, and retaliatory conduct.

172.    As a result, Plaintiffs have suffered damages.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information

pertaining in any way to Plaintiffs' employment, to their claims alleged herein, their claims to

damages, and to any defenses to the same, including, but not limited to electronic data storage,

employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images,

cache memory, contracts for work, payroll records, paystubs, time records, timesheets, and any

other information and/or data which may be relevant to any claim or defense in this litigation.

## JURY DEMAND

Plaintiffs request a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants, jointly and severally,

in an amount to be determined at the time of trial plus interest, including but not limited to all

emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory

damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the

Court deems just and proper.

## << SIGNATURE TO FOLLOW ON NEXT PAGE >>

**DEREK SMITH LAW GROUP, PLLC**

*Attorneys for Plaintiffs*

By: __/s/ Catherine W. Lowry, Esq_____
Catherine W. Lowry, Esq.
1628 Pine Street
Philadelphia, Pennsylvania 19103
Catherine@dereksmithlaw.com

Date: December 4, 2025